UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61236-CIV-COHN/SELTZER

JAMES MCFADDEN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed, respectively, by Plaintiff James McFadden, Jr. ("Claimant") and by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida (DE 4).

The cross-motions present the following issue: whether there exists substantial evidence to support the determination by the Administrative Law Judge ("ALJ") that Claimant retains the residual functional capacity to perform the full range of medium work, is able to perform work that exists in the national economy, and is therefore "not disabled"

---

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. See Lovett v. Schweiker, 667 F.2d 1 (5th Cir. 1981).

within the meaning of the Social Security Act. The undersigned concludes that substantial evidence does support the ALJ's determination. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 19) be DENIED, that Defendant's Motion for Summary Judgment (DE 20) be GRANTED, and that Commissioner's decision be AFFIRMED.

I.   PROCEDURAL HISTORY

On April 21, 2009, Claimant filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability as of February 9, 2008, due to impairments to his hip and right leg. Tr. 108, 130. His applications were denied initially and upon reconsideration. Tr. 60-64. A hearing was held before an ALJ on September 9, 2010, at which Claimant appeared with counsel and testified. Tr. 29-59. A vocational expert also testified at the hearing. Id. The ALJ issued her decision on September 22, 2010, finding that Claimant can perform the full range of medium work, that he can perform jobs existing in significant numbers in the national economy, and that he is therefore not disabled. Tr. 23-24. Thereafter, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner. Tr. 1-7.

On June 20, 2012, Claimant filed a Complaint in this Court seeking judicial review of the Commissioner's decision (DE 1). On November 6, 2012, the Commissioner filed Defendant's Answer to Complaint (DE 15), together with the administrative record (DE 16). On January 8, 2013, Claimant filed Plaintiff's Motion for Summary Judgment ("Claimant's Motion") (DE 19), and on February 7, 2013, the Commissioner filed Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's

Motion for Summary Judgment ("Commissioner's Motion") (DE 20). Claimant has neither responded to the Commissioner's Motion nor replied to her Response, and his time for doing so has passed.

The matter is now ripe for review.

III. FACTS

The undersigned has reviewed the Statement of Facts contained within the Commissioner's Motion and finds that it fairly and accurately summarizes the relevant portions of the administrative record.[2]

### 1. Vocational Factors Relevant to Plaintiff's Ability to Work

Plaintiff was 55 years old on his alleged disability onset date (Tr. 23, 110). He has a high school education and past relevant work experience as a carpenter (Tr. 32-33). The vocational expert testified that Plaintiff performed his work as a carpenter at the heavy level of exertion (Tr. 56). Despite the fact that he alleged an onset date of February 9, 2008 (Tr. 130), Plaintiff testified that he worked throughout 2008 and continued working until April 2009 (Tr. 33). He also testified that he began collecting unemployment benefits in 2009 and would receive his last payment the same week of the hearing (in September 2010) (Tr. 35).

### 2. Medical Evidence

On May 19, 2008, Plaintiff presented to Arthur Silverman, D.C., a chiropractor, for a final permanent impairment examination and evaluation of symptoms arising from a car accident that occurred on February 9, 2008 (Tr. 181). Plaintiff reported that his most dominant symptoms were neck, low back, and right knee pain (Tr. 182). He reported that he had under[g]one a course of chiropractic treatment, which included chiropractic adjustments, ice therapy, and neuromuscular massage therapy

---

[2] The undersigned has bracketed minor corrections to Defendant's Statement of Facts.

(Tr. 182). An examination of Plaintiff's right and left shoulders revealed that his deltoids were "strong" ("Grade 5-Active movement against gravity with full resistance"), though he was positive for the shoulder depression test on the right side (Tr. 183, 185). Plaintiff's right and left elbows, and lower extremities were also "strong" (Tr. 184). [] Plaintiff's right knee and cervical and lumbar spine showed only mild restriction (Tr. 183). Dr. Silverman concluded that Plaintiff had a "total combined upper extremity impairment of 0%" and that his total combined permanent impairment was "7% of the Whole-Person" (Tr. 187).

On June 2, 2009, Sultan S. Ahmed, M.D., consultatively examined Plaintiff at the state agency's request (Tr. 189). Plaintiff complained of right shoulder, hip, and knee pain (Tr. 189). Dr. Ahmed reported that Plaintiff had a "normal physical examination" (Tr. 191). Upon examination, Plaintiff exhibited full muscle strength, walked with a normal gait, and had a normal seated and supine straight leg raising test (Tr. 190). Plaintiff presented with a cane, but Dr. Ahmed noted that it was not clear that the cane was medically necessary (Tr. 190). He diagnosed Plaintiff with chronic right shoulder, right hip, and right knee pain (Tr. 191).

On July 25, 2009, Plaintiff presented to Memorial Regional Hospital with complaints of multiple joint pain (Tr. 201-02). The examining physician ordered an x-ray of Plaintiff's cervical spine (Tr. 203). On July 30, 2009, the x-ray of Plaintiff's cervical spine showed degenerative lower spondylosis at C5-6 and C6-7 (Tr. 203).

On October 3, 2009, Melvyn Rech, D.O., evaluated Plaintiff for his complaints of pain in the neck and joints (Tr. 228). Dr. Rech reported that Plaintiff's cervical motion was restricted, but he was able to walk on the balls of his feet and heels (Tr. 228). X-rays of his cervical spine showed moderate to severe spondylosis (Tr. 229). Dr. Rech prescribed Meloxicam, a non-steroidal anti-inflammatory drug, and ordered x-rays of Plaintiff's right knee and lumbar spine (Tr. 229).

On August 27, 2009, Debra Troiano, M.D., a state agency physician, completed a Physical Residual Functional Capacity (RFC) Assessment form at the state agency's request (Tr. 204-11). Dr. Troiano noted that Plaintiff was diagnosed with cervical degenerative disc disease, right hip and leg pain, and

> right shoulder and elbow pain (Tr. 204). After reviewing the evidence, [s]he opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour day, and sit for about 6 hours in an 8 hour day (Tr. 205).
>
> On November 27, 2009, an x-ray of Plaintiff's right knee revealed no fracture or dislocation and an x-ray of Plaintiff's lumbar spine showed "minimal" lumbar spondylosis (Tr. 288-89).
>
> On January 5, 2010, Dr. Rech reported that x-rays of Plaintiff's lumbar spine showed "slight" spondylosis and x-rays of his right knee showed "slight" restricted degenerative arthritis, but range of motion in these areas had improved (Tr. 225). Plaintiff's right knee had "minimal" crepitus (Tr. 225). Dr. Rech continued Plaintiff's prescription for Meloxicam (Tr. 225).
>
> On March 30, 2010, Dr. Rech noted that Plaintiff had discomfort in his neck and right knee when he was not taking his medications (Tr. 224). He continued the Meloxicam (Tr. 224).

Commissioner's Motion at 3-5 (DE 20).

IV.   STANDARD OF REVIEW[3]

In reviewing claims brought under the Social Security Act, the court's role is a limited one. The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." 42 U.S.C. 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support

---

[3] The SSI disability regulations appear in Subsection I of 20 C.F.R. Part 416, 20 C.F.R. § 416.901 et seq., and are generally identical to those set forth in 20 C.F.R. Part 404, Subsection P, 20 C.F.R. § 404.1501 et seq., governing Social Security disability determinations. The standard of review in SSI cases is the same as the standard for Social Security disability cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing Social Security disability determinations is generally applicable to SSI cases.

a conclusion." Moore, 405 F.3d at 1211; accord Perales, 402 U.S. at 401. The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.  ANALYSIS

   A.  The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). In determining the merits of a claim for benefits, courts must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520, 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the

second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment is not found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next phase of the analysis. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as what "you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all the relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). The ALJ must then compare the RFC to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that other substantial gainful employment exists in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If

the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. Smith, 646 F.2d at 1077. These shifting burdens make up the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, subpt. P, app. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. §§ 404.1569, 416.969. The Guidelines are composed of detailed grids and rules, which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. §§ 404.1569, 416.969. The Guidelines, therefore, are generally not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991); Walker, 826 F.2d at 1002-03. Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments. Hargis, 945 F.2d at 1490; Walker, 826 F.2d at 1003. When the Guidelines may not be conclusively applied,

they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry her burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

B.   Application of the Sequential Evaluation by the ALJ

After considering all the evidence, the ALJ found that Claimant retains the RFC to perform the full range of medium work and that he is therefore "not disabled" within the meaning of the Social Security Act. Tr. 24. In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.

The ALJ first observed that Claimant has not engaged in substantial gainful activity since February 9, 2008, the alleged onset date of disability. Tr. 18. He noted, however, that Claimant did receive unemployment benefits after February 9, 2008, a fact that may give rise to an inference of non-disability. Tr. 18.

The ALJ next found that Claimant does suffer "severe" impairments: "chronic right shoulder pain; right hip pain; right knee pain; spondylosis at C5-6 and C6-7; prostate cancer; low back pain; and alcohol abuse." Tr. 19. But the ALJ also found that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Id.

The ALJ then assessed Claimant's RFC. As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. The ALJ, however, found that Claimant's "statements concerning the intensity, persistence and

limiting effects of [his] symptoms are not credible." Tr. 21. The ALJ further found that Claimant retains the RFC for a full range of medium work and "is not so disabled as to be unable to perform any work related activity." Tr. 21, 24. In arriving at this RFC finding, the ALJ gave great weight to the opinion of the State agency examiner, who believed that Claimant could lift or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour day, and sit for about 6 hours in an 8 hour day. Tr. 22, 205. Additionally, the ALJ gave considerable weight to the findings of the treating and examining sources. Arthur Silverman, D.C., who treated Claimant for symptoms resulting from a car accident, determined that Claimant's most dominant symptoms were neck, low back, and knee pain. Tr. 22, 182. Dr. Silverman also determined that Claimant had a "total combined upper extremity impairment of 0%." Tr. 187. At the request of the Social Security Administration, Claimant also underwent a consultative examination administered by Sultan Ahmed, M.D. Dr. Ahmed concluded that Claimant had a normal physical examination with history of right knee, right shoulder, and right hip pain. Tr. 20. In addition, Dr. Ahmed reported that Claimant exhibited "dull" pain in his right shoulder. Tr. 189. After assessing all the evidence, the ALJ determined that Claimant retains the RFC for a full range of medium work. Tr. 24.

The ALJ next considered whether Claimant's RFC would permit him to return to his past relevant work. Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Claimant had performed his past relevant work as a carpenter at the "heavy" exertional level. Tr. 22. Upon comparing Claimant's RFC (for a full range of medium work) with the (heavy) exertional requirements of his carpentry work, the ALJ found that he was unable to return to his past relevant work. Id.

Finally, the ALJ considered whether there exist other jobs that Claimant can perform. The ALJ had asked the VE whether jobs exist in the national economy for an individual with Claimant's age, education, work experience, and RFC, to which the VE responded with several examples.[4] Based upon this testimony, the ALJ found that Claimant "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 24. Furthermore, based on Claimant's RFC for a full range of medium work, together with his age, education, and work experience, the ALJ found that Guidelines Rule 203.15 directs a finding of not disabled. Tr. 24. Accordingly, the ALJ concluded that Claimant "has not been under a disability, as defined in the Social Security Act," and, therefore, is not entitled to either DIB or SSI. Id.

C.   Discussion

In his motion, Claimant identifies only one error in the ALJ's decision: the ALJ failed to account for his "severe" right shoulder impairment in the RFC assessment. Claimant's Motion at 10-12 (DE 19). The undersigned, however, finds Claimant's argument unpersuasive and concludes that the ALJ's RFC assessment is supported by substantial record evidence and adequately accounts for any limitations attributable to Claimant's right shoulder pain.

Claimant contends that the ALJ failed to consider one of his "most significant medical problems: his chronic right shoulder pain" when assessing his RFC. Claimant's Motion at 11 (DE 19). Yet, Claimant fails to identify any portion of the record that would

---

[4] The VE offered examples of at least six different light jobs that Claimant can perform: assembler of small products, assembler of printed products, machine tender, pre assembler printed circuit board, inspector of surgical instruments, and assembler of plastic surgical products. Tr. 23.

show that his shoulder pain results in limitations beyond those already accounted for in the RFC. To the contrary, the record rebuts any suggestion that Claimant's shoulder pain is more limiting than the RFC already provides. First, noteworthy by its absence is any mention of shoulder pain as a basis for disability in Claimant's initial application. Tr. 130 (indicating only a "hip right leg fracture" as the basis for his disability). In addition, Claimant's medical records indicate that medical sources treated him primarily for impairments other than shoulder pain. Tr. 182, 224-25, 288-89. Significantly, none of Claimant's physical examinations revealed that his right shoulder impairment created any work-preclusive limitations, and none of Claimant's physicians ordered any diagnostic tests or recommended any special treatment for the shoulder; they merely prescribed anti-inflammatory medication to alleviate a variety of musculoskeletal complaints. Tr. 224-225, 229. At most, Claimant's medical treatment for his right shoulder was limited, routine, and conservative.

Furthermore, the ALJ did consider Claimant's allegations of right shoulder pain when she addressed the findings of Claimant's treating and examining physicians. The ALJ noted the examination of Claimant by Dr. Ahmed, during which Claimant complained of and was diagnosed with chronic right shoulder pain. Tr. 21, 189. Dr. Ahmed, however, did not find any functional limitations stemming from Claimant's shoulder pain, finding instead that Claimant's range of motion for his right shoulder was within the normal range. Tr. 195. The ALJ also noted the findings by Dr. Silverman that Claimant's right shoulder was "strong" and that he had a "total combined upper extremity impairment of 0%." Tr. 184, 187. Therefore, allowing that Claimant may experience some right shoulder pain, the ALJ's reduction of Claimant's RFC from "heavy" to "medium" work adequately accounts for

any limitations resulting from that impairment. Significantly, the ALJ's decision finds further support in the disability assessment of Dr. Troiano, the State agency medical consultant, who identified Claimant's exertional limitations, which were consistent with the requirements for medium work. Tr. 204-211; see 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (stating that state agency medical consultants are highly qualified experts in Social Security disability evaluation).

Moreover, despite alleging disability as of February 2008, Claimant admitted that he had actually worked until April 2009 – for more than one year after his disability onset. Claimant further admitted that he received unemployment benefits, eligibility for which requires the ability to work, in 2009 and 2010 – up to two years after his disability onset. Tr. 35; see Fla. Stat. § 443.091(1)(d) (requiring that an applicant for unemployment benefits be "able to work" and "actively seeking work" to qualify for unemployment benefits). That Claimant continued to perform heavy work and that he subsequently applied for and received unemployment benefits (after his onset date) significantly undermine his assertion that he became disabled as of February 2008.

In sum, the ALJ's RFC finding that Claimant can perform medium work adequately accounts for any limitations arising from Claimant's right shoulder pain. The record evidence does not suggest, let alone require, that the ALJ include additional limitations in the RFC assessment or in any hypothetical to a VE.

VI.   **RECOMMENDATION**

The ALJ accorded Claimant a full and fair administrative consideration in accordance with the applicable statutes and regulations. Based upon substantial evidence in the administrative record, she found that Claimant has the RFC for a full range of

medium work and that he is therefore able to perform jobs that exist in significant numbers in the national economy. Having properly reached those findings, the ALJ correctly concluded that Claimant is "not disabled" and not entitled to DIB and SSI benefits. The undersigned, therefore, respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 19) be DENIED, that Defendant's Motion for Summary Judgment (DE 20) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Nettles v. Wainwright</u>, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 21st day of March 2013.

BARRY S. SELTZER
Chief United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

Marlene A. Fernandez-Karavetsos
Assistant United States Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Attorney for Defendant

Adam S. Neidenberg, Esquire
1214 S. Andrews Avenue, #304
Fort Lauderdale, Florida 33316
Attorney for Plaintiff